1

**BURSOR & FISHER, P.A.**
Joel D. Smith (State Bar No. 244902)

2
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940

3
Walnut Creek, CA 94596
Telephone: (925) 300-4455

4
Facsimile: (925) 407-2700
E-mail: jsmith@bursor.com

5
        bscott@bursor.com

6
*Attorneys for Plaintiff*

7

8
**UNITED STATES DISTRICT COURT**

9
**NORTHERN DISTRICT OF CALIFORNIA**

10

11
LORIANN STAPLES, individually and on behalf of all others similarly situated,
      Case No.

12

13
          Plaintiff,
      **CLASS ACTION COMPLAINT**

14
   v.

15
SIMMONS BEDDING COMPANY, LLC,
      <u>JURY TRIAL DEMANDED</u>

16
          Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Loriann Staples brings this action on behalf of herself and all others similarly situated against Defendant Simmons Bedding Company, LLC.

## NATURE OF THE ACTION

1.     This is a putative class action lawsuit on behalf of purchasers of Defendant's 1000 thread count bedding and linen products (the "Beautyrest Products"). Defendant designs, markets, manufactures, distributes, and sells the Beautyrest Products as having higher thread counts (the "Thread Count Claims") than they actually have and, as such were of better quality, more durable, longer lasting, softer, and more comfortable for sleeping that products with lesser thread counts. However, every package of the Beautyrest Products falsely and misleadingly represents that the products contain a higher thread count than the Beautyrest Products actually have. In purchasing Defendant's bedding and linen products, Plaintiff and the Class received less than what was promised by Defendant due to the inflated thread counts represented on the advertisements and labels of the Products.

2.     However, independent testing has revealed that, contrary to Defendant's representation that its products are made with a thread count of 1000, the Beautyrest Products are actually made with a thread count of 216.[1]

3.     Defendant's false and misleading representations of the Beautyrest Products are reasonably likely to deceive the public. The false and misleading representation of the thread count deceives and misleads consumers into believing that they are purchasing a product which is of higher quality, durability, longevity, softness, or better for sleeping than products with a lower thread count.

4.     Plaintiff and Class Members purchased the Beautyrest Products, which are designed, marketed, manufactured, distributed, and sold by Defendant. Further, Plaintiff and Class Members relied to their detriment on Defendant's false representation that the Beautyrest Products were high thread count. Plaintiff and Class Members would not have purchased Defendant's Beautyrest Products – or would not have paid as much as they did to purchase them – had they

---

[1] *See* Exhibit A.

1   known that they were not in fact the thread count represented.  Plaintiff and Class Members thus

2   suffered monetary damages as a result of Defendant's deceptive and false representations.

3   <u>**PARTIES**</u>

4   5.      Plaintiff Loriann Staples is domiciled in California, residing in Fremont, California.

5   In, or around, November 2021, Plaintiff Staples purchased a pack of Beautyrest 1000 thread count

6   bed sheets from a Target in Fremont, California.  Prior to her purchase of her Beautyrest Product,

7   Plaintiff Staples reviewed the product's labeling and packaging and saw that the product was

8   labeled and marketed as "1000 thread count bed sheets."  Plaintiff Staples relied on that labeling

9   and packaging to choose her Beautyrest Products over comparable products.  Plaintiff Staples saw

10  these representations prior to, and at the time of purchase, and understood them as representations

11  and warranties that her Beautyrest Product would be of a "1000 thread count."  Plaintiff Staples

12  relied on these representations and warranties in deciding to purchase her Beautyrest Product.

13  Accordingly, those representations and warranties were part of the basis of the bargain, in that she

14  would not have purchased her Beautyrest Product on the same terms had she known those

15  representations were not true.  However, Plaintiff Staples did not receive the benefit of her bargain

16  because her Beautyrest Product was not, in fact, of a 1000 thread count.

17  6.      Further, had Plaintiff known that the Beautyrest Products were misbranded, she

18  would not have purchased them or would have paid a lower amount for them.

19  7.      In making her purchases, Plaintiff and putative class members paid a substantial

20  price premium due to the false and misleading Thread Count Claims.

21  8.      Simmons Bedding Company, LLC ("Simmons") is a corporation incorporated in the

22  state of Delaware with its principal executive office located in Atlanta, Georgia.  Simmons

23  manufactures, sells, and/or distributes Beautyrest-brand products, and is responsible for the

24  advertising, marketing, trade dress, and packaging of the Beautyrest Products.  Simmons

25  manufactured, marketed, and sold the Beautyrest Products during the class period.

26  <u>**JURISDICTION AND VENUE**</u>

27  9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a)

28  because this case is a class action where the aggregate claims of all members of the proposed class

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                    2

are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, are citizens of states different from Defendant.

10.     This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws and benefits of doing business in California, and Plaintiff Staples's claims arise out of each of the Defendants' forum-related activities including the sale, marketing, and advertising of the Beautyrest Products.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District and a substantial part of the events giving rise to Plaintiff Staples's claims took place within this District.

## PRE-SUIT NOTICE

12.     On April 7, 2023, Plaintiff Staples sent a pre-suit notice via certified mail notifying Defendant that it violated Cal. Civ. Code §§ 1750, et. seq., including specifically subsections 1770(a)(5), (7), and (9), and had breached express and implied warranties.  The notice letter was sent on behalf Plaintiff Staples and all individuals in the United States who purchased Beautyrest Products.  The letter provided notice that the labeling and advertising for all Beautyrest branded products falsely claimed that the products had a thread count of 1000, when in fact they have a thread count closer to 216.

13.     As of the date of this complaint, Defendant has been given ample opportunity to investigate and settle claims on behalf of Plaintiff Staples and the putative classes yet failed to take any remedial action.

## FACTUAL ALLEGATIONS

**A.     Defendant's Misrepresentations Regarding Beautyrest Products**

14.     **Products at issue**: Defendant manufactures, distributes, advertises, and sells Beautyrest branded 1000 thread count sheets and pillowcases.

15.     Defendant distributes, markets, and sells the Beautyrest Products.  Through an extensive and widespread nationwide marketing campaign, including on the product packaging, Defendant claims that the Beautyrest Products are made with a 1000 thread count.

16.     **Relevant time period**: All misrepresentation at issue here were consistently made at all times during the last four years, at least.

17.     **Misrepresentation at issue**: Defendant misrepresents the Beautyrest Products as having a thread count of 1000:



18.     There have been no material changes to the product packaging during the relevant time period.  In particular, the Beautyrest Products have consistently been labeled and advertised with the words "1000 THREAD COUNT" prominently displayed.

19.     Defendant intends that consumers will read and rely on the Thread Count Claims made in Defendant's advertising and labeling, and Plaintiff and putative class members did read and rely on those claims to their detriment.

20.     Each consumer who has purchased the Beautyrest Products has been exposed to Defendant's misleading advertising.  For example, the front panel of Beautyrest Products' labels states in all capital letters that the product has a "1000 THREAD COUNT."  The Thread Count Claims are material to consumers, who purchase Beautyrest Products to obtain the higher advertised thread count which the Beautyrest Products do not provide.

1

2

**B.      Why/How the statements at issue here have the tendency or capacity to deceive or confuse reasonable consumers**:

3

4

21.      Consumers purchasing bedding and linens use a product's thread count as an indication of fabric quality and durability.[2]  This then becomes a basis on which they make purchasing decisions.[3]  Generally, the higher the thread count, the higher the price for that product will be.

5

6

7

22.      Industry participants, including Defendant, know that consumers will pay higher prices for bedding and linen products with a higher thread count because of the purported higher quality.  Therefore, industry participants increase product pricing as the thread count on the products increase.  This includes industry participants such as Simmons.

8

9

10

11

23.      Thread count is the number of vertical and horizontal threads (warp and [filling]) in one square inch of fabric.  The industry standard for measuring thread counts is based on the American Society for Testing and Materials' ("ASTM") Standard Test Method for Warp (End) Count and Filling (Pick) Count of Woven Fabric, Designation: D3775 (applicable to all woven fabrics).  This standard requires that individual warp ends and filling picks are counted as "single units regardless of whether they are comprised of single or plied components" per D3775.

12

13

14

15

16

17

24.      The decade-long industry practice in the United States for thread counting has been to "count the number of threads in both the warp and filling directions" and to count plied yarns as "one yarn, regardless of whether the yarn was a single ply or multi-ply yarn.  (A multi-ply yarn is one yarn that has been created by twisting two or more yarns together.)"[4]

18

19

20

21

25.      However, some manufacturers, including Defendant, have departed from the industry standard for measuring thread count by "counting plied yarns individually."[5]  This results

22

23

24

25

26

27

28

[2] ABC News, *Are Shoppers Short-Sheeted by Thread Count?*, https://abcnews.go.com/GMA/story?id=125380&page=1

[3] *Id.*

[4] Letter from James Kohm, Assoc. Dir. for Enf't Bureau of Consumer Prot., FTC, to E. Linwood Wright, III, Chairman of the Textile Bedding Comm. of the Nat'l Textile Ass'n (Aug. 2, 2005) https://www.ftc.gov/sites/default/files/documents/advisory_opinions/national-textile-association/natltextileassn.pdf

[5] *Id.*

1  in a thread count inflation of double or triple (or higher) the thread count as would be measured

2  using traditional industry standards.[6]

3        26.    In a letter to the National Textiles Association ("NTA"), the Federal Trade

4  Commission ("FTC") stated that this non-traditional practice of measuring thread count "created

5  confusion in the marketplace and has caused consumers to compare thread counts that may have

6  been calculated in two dramatically different ways."[7]  The FTC also stated that "consumers could

7  be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying

8  the actual count by the number of plies within the yarn."[8]

9        27.    The practice of counting the plies that make up each thread was also condemned by

10  the American Textile Manufacturer's Institute ("ATMI").  In a letter sent to the FTC on January

11  31, 2002, Exhibit B, ATMI addressed marketing of bed sheets and pillowcases to consumers with

12  claims of extremely high yarn or thread count claims, stating that:

> Labeling these products based on a count that includes each ply in plied yarns deceives the customer into believing that bedding products with higher counts are better, when, in fact, they might be inferior because of the method used to determine the count.
>
> ...
>
> In many cases, these extremely high counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric. A plied yarn is one in which two or more yarns are twisted together to form a single strand.
>
> ATMI believes this method of labeling products based on counting each individual yarn in plies to be a deceptive practice, which misleads the American public into making purchasing decisions to purchase items, based on false and misleading information.
>
> ASTM method D 3775-96 (Standard Test Method for Fabric Count of Woven Fabric) [a prior version of D3775-12] the long-accepted industry standard for determining count.  This method has been in use in this country for many years and serves as the industry's standard way to report the count of many woven textile

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

fabrics, including sheeting.  It is based on the number of yarns in the warp direction and filling direction, regardless of ply, and has become an important parameter used by consumers to judge the quality of sheeting products, since the higher the count, the more luxurious the product.

ATMI believes that any information provided to the consumer should be true and correct so as not to be deceptive or misleading.  We believe that plied yarns are properly counted as only one yarn.  For example, a fabric containing 250 individual four ply yarns in a square inch would be described as a "250 thread count fabric, even though each thread or yarn contained four plies twisted together."  **It would be false and misleading to describe this as a 1000 thread count product**.

28.     Despite knowing the long-standing industry standards, Defendant deviated from the traditional thread counting standards to mislead consumers.  Defendant's Beautyrest Products were manufactured, marketed, advertised, sold, and/or distributed with inflated thread counts.

29.     When Defendant's Beautyrest Products were measured according to industry standards by an independent lab, the thread counts were significantly less than claimed by Defendant.  Plaintiff's counsel commissioned independent laboratory testing of Defendant's products, which show that the Beuatyrest Products do not have the thread count promised.  Specifically, independent testing of Defendant's 1000 thread count sheets found the sheets had a thread count of 216 based on traditional industry standards as compared to the 1000 thread count claimed by Defendant.[9]

30.     Defendant knew or should have known that its method of calculating the thread count was misleading.  By representing that its products had higher thread counts than the Beautyrest Products had, Defendant unjustly profited from the sale of such bedding and linen products to consumers.  Because of Defendant's inflated thread counts, Plaintiff and other Class Members purchased products they would not have otherwise purchased, or that they would have paid a lower price for had they know the actual thread counts at the time of purchase.

## CLASS ALLEGATIONS

31.     Plaintiff seeks to represent a class defined as all people in the United States who purchased any Beautyrest Product that represents the product as having a thread count of 1000 during the applicable statute of limitations (the "Class").  Specifically excluded from the Class are

---

[9] *See* Exhibit A.

Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

32.     Plaintiff also seeks to represent a subclass consisting of Class Members who reside in California (the "California Subclass").

33.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclasses may be expanded or narrowed by amendment or amended complaint, including through the use of multi-state subclasses to account for material differences in state law, if any.

34.     **Numerosity.**  The Class and Subclass Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimate that there are hundreds of thousands of Members in the Class and in the Subclass.  Although the precise number of Class and Subclass Members is unknown to Plaintiff, it is known by Defendant and may be determined through discovery.

35.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all Members of the Class and Subclasses and predominate over any questions affecting only individual Class or Subclass members. These common legal and factual questions include, but are not limited to, the following:

> (a) Whether Defendant made false and/or misleading statements to the consuming public concerning the Thread Count Claims on the Beautyrest Products;
>
> (b) Whether Defendant omitted material information to the consuming public concerning the Thread Count Claims on the Beautyrest Products;
>
> (c) Whether Defendant's labeling and packaging for the Beautyrest Products is misleading and/or deceptive;

(d) Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of the Beautyrest Products;

(e) Whether Defendant's representations concerning the Beautyrest Products were likely to deceive a reasonable consumer;

(f) Whether Defendant's omissions concerning the Beautyrest Products were likely to deceive a reasonable consumer;

(g) Whether Defendant represented to consumers that the Beautyrest Products have characteristics or qualities they do not have;

(h) Whether Defendant advertised the Beautyrest Products with the intent to sell it not as advertised;

(i) Whether Defendant made and breached express and/or implied warranties to Plaintiff and Class and Subclass Members about the Beautyrest Products;

(j) Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiff and Class and Subclass Members; and

(k) Whether Plaintiff and Class and Subclass Members are entitled to damages.

36.  **Typicality.**  Plaintiff's claims are typical of the claims of the other Members of the Class and Subclasses in that, among other things, all Class and Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading claims about the purported thread count of the Beautyrest Products.  All Class and Subclass Members were comparably injured by Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

37.  **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Members of the Class and Subclasses.  Plaintiff retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclasses.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclasses.

38.  **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by

individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them. Even if Class or Subclass Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. It would also increase the delay and expense to all parties and the court system from the issues raised by this action. The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

39.    In the alternative, the Class and Subclasses may also be certified because:

(a) the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class or Subclass Members that would establish incompatible standards of conduct for Defendant;

(b) the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Subclass Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or Defendant has acted or refused to act on grounds generally applicable to the Class and to the Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the Members of the Class and to the Members of the Subclass as a whole.

**COUNT I**
**Breach Of Express Warranty**
**(On Behalf Of The Class And The Subclasses)**

40.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

41.     Plaintiff brings this Count individually and on behalf of the members of the proposed Class and the Subclasses against Defendant.

42.     This claim is brought under the law of California.

43.     As the designer, manufacturer, marketer, distributor, and/or seller of the Beautyrest Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Beautyrest Products had a thread count of 1000.

44.     Plaintiff and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the products' thread count, quality, durability, and fitness of the products.

45.     Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class and the Subclasses.

46.     In fact, the Beautyrest Products do not conform to Defendant's representations about the thread count because the Beautyrest Products have a lower thread count.  By falsely representing the Beautyrest Products in this way, Defendant breached express warranties.

47.     On April 7, 2023, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a warranty notice letter that complied in all respects with U.C.C. 2-607.  The letter provided notice of breach of express and implied warranties.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the U.C.C. 2-607 and state consumer protection laws and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff Staples and all other similarly situated purchasers.

48.     As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class and Subclasses were injured because they: (1) paid money for the Beautyrest Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Beautyrest Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Beautyrest Products they purchased had less value than if Defendant's representations about the characteristics of the Beautyrest Products were

truthful.  Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class and Subclass Members would not have purchased the Beautyrest Products or would not have paid as much as they did for them.

## COUNT II
### Breach of Implied Warranty of Merchantability
### (On Behalf Of The Class And California Subclass)

49.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

50.     Plaintiff Staples brings this Count individually and on behalf of the members of the proposed Class and the California Subclass against Defendant.

51.     This claim is brought under the law of the State of California.

52.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Beautyrest Products would have a thread count of 1000.

53.     Defendant, through its acts and omissions set forth herein, in its sale, marketing, and promotion of Beautyrest Products, made implied representations to Plaintiff and the Class that their Beautyrest Products had a thread count of 1000.

54.     Defendant's Products had an entirely different thread count based on industry standards.  The Products were not of fair and average quality within Defendants' description.  The Products were also not labeled as required because the Product packaging contains misrepresentations.  The Products do not conform with the promises on their labels.

55.     Defendant breached its implied warranties because the Beautyrest Products did not have a thread count of 1000 and instead had a much lower thread count of approximately 216.  As a result of Defendant's conduct, Plaintiff and the Class did not receive the goods as impliedly warranted by Defendant.

56.     Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in an amount to be determined at trial.

## COUNT III
### Unjust Enrichment
### (On Behalf Of The Class And The California Subclass)

57.     Plaintiff hereby incorporates by reference the allegations contained in all proceeding paragraphs of this complaint.

58.     Plaintiff Staples brings this claim individually and on behalf of members of the Class and California Subclass against Defendant.

59.     This claim is brought under the laws of the State of California.

60.     Plaintiff Staples and Class and California Subclass members conferred benefits on Defendant by purchasing the Products.

61.     Defendant has knowledge of such benefits.

62.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff Staples' and Class and California Subclass members' purchases of the Beautyrest Products. Retention of monies under these circumstances is unjust and inequitable because Defendant misrepresented that the Products contained a thread count of 1000 and failed to disclose that the Beautyrest Products had a much lower thread count, and charged a price premium based on those representations and omissions.

63.     Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.  Putative class members lack and adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## COUNT IV
### Fraud
### (On Behalf Of The Class And Subclasses)

64.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

65.     Plaintiff brings this claim individually and on behalf of members of the Class and putative Subclasses.

66.     As discussed above, Defendant misrepresented that Beautyrest Products have a thread count of 1000.

67.     The false and misleading representations were made with knowledge of their falsehood.

68.     The false and misleading representations were made by Defendant, upon which Plaintiff and members of the Class and Subclasses reasonably and justifiably relied and were intended to induce and actually induced Plaintiff and Class members to purchase Beautyrest Products.

69.     The fraudulent actions of defendant caused damage to Plaintiff and members of the Class, who are entitled to damages as a result.

**COUNT V**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq*.**

70.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

71.     Plaintiff Staples brings this claim individually and on behalf of the members of the California Subclass against Defendant.

72.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

73.     Plaintiff Staples and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Beautyrest Products for personal, family, or household purposes.

74.     Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c). Defendant's Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

75.     Plaintiff Staples, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

76.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was

undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

77.     As alleged more fully above, Defendant has violated the CLRA by marketing that the Products would have a thread count of 1000 when they do not, in fact, have this thread count.

78.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

79.     The CLRA was enacted to protect consumers against such practices.  The CLRA applies to Defendant's conduct because the statute covers all sales of goods to consumers.

80.     As a direct and proximate result of Defendant's unfair and deceptive business practices, as alleged above and herein, Plaintiff Staples and other Members of the California Subclass suffered injury.

81.     On information and belief, Defendant's unfair and deceptive business practices, as alleged above and herein, were willful, wanton, and fraudulent.

82.     On information and belief, Defendant's officers, directors, and/or managing agents authorized the use of the false and misleading statements regarding the Beautyrest Products' thread counts, as alleged above and herein.

83.     Plaintiff Staples and the members of the California Subclass have suffered harm as a result of these violations of the CLRA because they have paid monies for the Beautyrest Products that they otherwise would not have incurred or paid.

84.     Plaintiff Staples and the California Subclass Members seek compensatory damages, punitive damages, injunctive relief, attorneys' fees, and restitution of any ill-gotten gains due to Defendant's acts and practices in violation of the CLRA.

## COUNT VI
### Violation of California's False Advertising Law ("FAL"), Business & Professions Code § 17500 *et seq*.

85.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

86.     Plaintiff Staples brings this claim individually and on behalf of the members of the proposed Class and California Subclass.

87.     Defendant violated Business & Professions Code § 17500 by publicly disseminating false, misleading, and deceptive advertisements regarding the Beautyrest Products by advertising that the Beautyrest Products contained a thread count of 1000 when they do not, in fact, have a thread count of 1000.

88.     Defendant's false and misleading advertisements were disseminated to increase the sales of Beautyrest Products.  Defendant knew or should have known that its advertisements for the Beautyrest Products were false, misleading, and deceptive.

89.     Plaintiff Staples and the members of the Class and California Subclass have suffered harm as a result of these violations of the FAL because they have incurred charges and/or paid monies for Products that they otherwise would not have incurred or paid.

90.     Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fail to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the FAL entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

91.     Plaintiff Staples seeks all available relief under the FAL.

**COUNT VII**
**Unlawful Business Practices In Violation of**
**California's Unfair Competition Law ("UCL"),**
**Business & Professions Code §§ 17200 *et seq.* (Unlawful Practices)**

92.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

93.     Plaintiff Staples brings this claim individually and on behalf of the members of the proposed Class and on behalf of the California Subclass.

By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 by engaging in unlawful, fraudulent, and unfair conduct.

94.     Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9) as alleged above.  Defendant has also violated the unlawful prong under FCTA § 5(A) because its business practices are "likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition."  15 U.S.C. § 45(n).

95.     Defendant's business practices are deceptive because they include affirmative representations and omissions and are likely to mislead reasonable consumers under the circumstances.

96.     Defendant's business practices are further unlawful under the CLRA and under UCL § 17000, *et seq.*, as alleged herein.

97.     Defendant's business practices are also unlawful pursuant to the FTCA by way of the Textile Fiber Products Identification Act, 15 U.S.C. §§ 70a(a), 70a(b), and/or § 70a(c).  These sections make it unlawful, under 15 U.S.C. §§ 41 et seq., to sell, transport, deliver, or advertise "any textile fiber product . . . which is misbranded or deceptively advertised."

98.     Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct

at issue here.  Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

99.     As a result of Defendant's unlawful business practices, Plaintiff and Class Members have been harmed and are entitled to injunctive relief against the continuation of Defendant's practices, as well as the restitution of payments made for Defendant's bedding and linen products, including other equitable relief, costs, and attorneys' fees as recoverable by law, pursuant to UCL § 1720.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class and the Subclasses under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Class, Plaintiff Staples representative of the California Subclass, and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

(b) For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff, the Class, and the Subclasses on all counts asserted herein;

(d)  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)  For prejudgment interest in all amounts awarded;

(f)  For an order of restitution and all other forms of equitable monetary relief, including non-restitutionary disgorgement;

(g)  For an order awarding Plaintiff and the Class and Subclasses their reasonable attorney's fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.


Dated:  May 17, 2023                 **BURSOR & FISHER, P.A**.

By:   */s/ Joel D. Smith*
Joel D. Smith
Joel D. Smith (State Bar No. 244902)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: jsmith@bursor.com
          bscott@bursor.com

*Attorneys for Plaintiff*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Joel D. Smith, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California, and I am a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) because Plaintiff alleges that the transaction at issue occurred in this County.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Danielson, Connecticut, on May 17, 2023.

_____*/s/ Joel D. Smith*_____
Joel D. Smith

**EXHIBIT A**



**Vartest**
Laboratories

**Quality Assurance & Compliance Testing**
**Utilizing Textile & Related Technologies**

19 West 36th Street, 10th Floor
New York, NY 10018
Tel: 212 947 8391   Fax: 212 947 8719

www.vartest.com

## 𝕴𝕾𝕺/𝕴𝕰𝕮 17025 𝕿𝕳𝖎𝖗𝖉 𝕻𝖆𝖗𝖙𝖞 𝕿𝖊𝖘𝖙 𝕽𝖊𝖕𝖔𝖗𝖙

**DATE:**     March 15, 2023                        **FILE:** BURFIS.A030923B

**CLIENT:**   Bursor & Fisher, P.A.                 **ATTN:** Alex Riggsby
              1990 N. California Blvd., Suite 940
              Walnut Creek, CA 94596

**SAMPLE IDENTIFIED BY CLIENT AS:**

    Sheet Set Submitted
    Manufacturer: Beautyrest
    Style: Cotton Blend Cooling 4pc Sheet Set, Full
    Lot #: BR20-1871, Ref: 1000 tc
    Color Gray

**TEST PROCEDURES:**                    **TEST RESULTS:**

**FABRIC COUNT**
**(ASTM D3775):**                       148 ends/" x 68 picks/" average

**COMMENT:**                            Test performed on pillowcase.
                                        Filling yarn is a continuous filament.
                                        Filling yarn is not clearly separable.

**THREAD COUNT**
**(ASTM D3775):**                       216

Signed For The Company By

Joseph Lin
Laboratory Manager

Stacy Sadowy
Quality Assurance Manager

CS/03



The findings and results in this test report apply only to the specific sample(s) submitted to us by the client for testing. Unless otherwise specified, all compliance statements are simple acceptance.
Terms and Conditions: http://vartest.com/resources/terms-and-conditions/

**EXHIBIT B**





FEDERAL TRADE COMMISSION

JAN 3 1 2002

DIVISION ENFORCEMENT

# A MERICAN TEXTILE
## MANUFACTURERS INSTITUTE

January 31, 2002

Mr. Steve Ecklund
Federal Trade Commission
Division of Enforcement
Washington, DC  20580

Re:    Request for FTC Staff
       Opinion on Yarn Count

Dear Mr. Ecklund:

It has come to our attention again that some companies are marketing bed sheets and pillowcases to U.S. consumers where extremely high yarn or thread counts are claimed – some as high as 1000 count.  We believe these products are mislabeled, creating deceptive information for the consumer.

Labeling these products based on a count that includes each ply in plied yarns deceives the customer into believing that bedding products with higher counts are better when, in fact, they might be inferior because of the method used to determine the count.  We wrote to the Commission regarding this same issue on February 24, 1997 (copy enclosed) and provided a fabric sample and independent lab report verifying our position.

In many cases, these extremely high counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric.  A plied yarn is one in which two or more yarns are twisted together to form a single strand.

ATMI believes this method of labeling products based on counting each individual yarn in plies to be a deceptive practice, which misleads the American



1130 Connecticut Ave., NW • Suite 1200 • Washington, DC  20036-3954
202-862-0500 • fax:  202-862-0570 • http://www.atmi.org
fax on demand:  202-862-0572



public into making decisions to purchase items, based on false and misleading information.

ASTM method D 3775-96 (Standard Test Method for Fabric Count of Woven Fabric) is the long-accepted industry standard for determining count. This method has been in use in this country for many years and serves as the industry's standard way to report the count of many woven textile fabrics, including sheeting. It is based on the number of yarns in the warp direction and filling direction, regardless of ply, and has become an important parameter used by consumers to judge the quality of sheeting products, since the higher the count, the more luxurious the product.

ATMI believes that any information provided to the consumer should be true and correct so as not to be deceptive or mis-leading. We believe that plied yarns are properly counted as only one yarn. For example, a fabric containing 250 individual four ply yarns in a square inch would be described as a "250 thread count fabric, even though each thread or yarn contained four plies twisted together." It would be false and mis-leading to describe this as a 1000 thread count product.

ATMI requests a staff opinion from the Federal Trade Commission on this issue. We believe that manufacturers, importers and retailers of bed sheets should rely on the ASTM D3775-96 standard test method to determine count.

Sincerely,

Carlos Moore
Executive Vice President


Enclosure